JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-0082 JGB (SPx)** | Date | April 23, 2018 |
|---|---|---|---|
| Title | *Rachel Warren v. Del Taco Restaurants, Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING Defendants' Motion to Compel Arbitration (Dkt. No. 25); and (2) DISMISSING the Case (IN CHAMBERS)**

Before the Court is Defendants Floanea Eka Broscoi, Norma Herrera, and Del Taco Restaurants, Inc.'s (collectively, "Defendants") motion to compel arbitration. ("Motion," Dkt. No. 25.) The Court held a hearing on the Motion on April 23, 2018. After considering the oral argument and papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion and DISMISSES the case.

### I.   BACKGROUND

On January 11, 2018, Plaintiff Rachel Warren filed a complaint against Defendants and Paul Murphy III. (Dkt. No. 1.) In her Complaint, Plaintiff alleges seven causes of action stemming from alleged discrimination and harassment she suffered while working at Del Taco. (See Compl.)

On March 22, 2018, Defendants moved to compel arbitration based on the Mutual Agreement to Arbitrate Claims ("Agreement") she signed with Del Taco in April 2017 at the commencement of her employment. (Mot. at 2.) The Agreement signed by Warren provided in part that:

> 1. **Claims Covered by this Agreement**. To the maximum extent allowed by law, the Company and I mutually consent to the resolution by binding arbitration of all claims or causes of action that the Company may have against me or that I may have against the Company or the Company's current and former owners, partners, members, officers, directors, employees, representatives and agents, all

>subsidiary and affiliated entities, all benefit plans, the benefit plans' sponsors, fiduciaries, administrators, affiliates, and all successors and assigns of any of them.
>
>The claims covered by this Agreement include, but are not limited to: claims for breach of any contract or covenant; tort claims; claims for discrimination or harassment (including, but not limited to, race, sex, religion, national origin, age, medical condition, disability or sexual orientation); claims for retaliation; claims for violation of public policy; claims for unpaid wages; and claims for violation of any federal, state, local or other law, statute, regulation or ordinance, including, but not limited to, all claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act, the California Fair Employment & Housing Act (and other state's anti-discrimination laws), the California Labor Code, and/or the Fair Labor Standards Act.

(Ex. A at 1, Graves Decl., Dkt. No. 25-3.)  Plaintiff opposed the Motion on April 2, 2018. ("Opposition," Dkt. No. 26.)  Defendant replied on April 9, 2018.  ("Reply, Dkt. No. 31.)

## II.   LEGAL STANDARD

In enacting section 2 of the Federal Arbitration Act ("FAA"), Congress "'declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'"  Perry v. Thomas, 482 U.S. 483, 489–90 (1987) (quoting Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)).  Specifically, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."  Id.; see also Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 270 (1995) ("[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate.")

Section 2, therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. Accordingly, if the FAA applies to a contract and if the arbitration provision is valid, courts must direct parties to arbitrate disputes involving issues that fall within an arbitration agreement.  See Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008).  A party seeking to compel arbitration under the FAA has the burden to demonstrate (1) the existence of a valid, written agreement to arbitrate in a contract; and (2) that the agreement to arbitrate encompasses the dispute at issue.  See id.; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

## III.   DISCUSSION

The contract at issue in this case is the Agreement between Warren and Del Taco. "Employment contracts, except for those covering workers engaged in transportation, are

covered by the FAA." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002); see also Brennan v. Opus Bank, 796 F.3d 1125, 1131 (9th Cir. 2015) (applying the FAA to an at-will employment agreement.) Here, Plaintiff was not engaged in transportation work, so the FAA applies. However, Plaintiff argues she cannot be compelled to arbitration because no valid arbitration agreement exists between the parties, and the Agreement is unconscionable. (See Opp'n.)

**A. Existence of Arbitration Agreement**

Del Taco asserts Warren agreed to the arbitration terms. (Mot. at 2.) Del Taco attaches a purported copy of the Agreement, as well as Warren's signed acknowledgement of the Agreement. ("Acknowledgement," Ex. B, Graves Decl., Dkt. No. 25-4.) The Acknowledgement provides:

> I acknowledge that I have carefully read this Agreement and that I understand is terms. I acknowledge that, except as otherwise provided herein, I am waiving my right to have any claim adjudicated or settled by a court or jury. I further acknowledge that I have been given the opportunity to discuss this Agreement with my private, legal counsel and have taken advantage of that opportunity to the extent I wanted to do so.

(Acknowledgement.) Warren's purported Acknowledgement was signed on April 20, 2017 along with Broscoi's signature.[1] (Id.) Plaintiff disputes ever seeing the Agreement or Acknowledgement and signing the Acknowledgement. (Opp'n at 8; Warren Decl. ¶¶4-6, Dkt. No. 28.)

Where one party disputes the "making of the arbitration agreement," the FAA requires the court first determine the issue before compelling arbitration. Sanford v. MemerWorks, Inc., 483 F.3d 956, 962 (9th Cir. 2007). California contract law applies to determine whether parties formed a valid agreement to arbitrate. Mitri v. Arnel Mgmt. Co., 157 Cal. App. 4th 1164, 1170 (2007). Under California contract law, the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. United States ex rel. Oliver v. Parsons Co., 195 F.3d 457, 462 (9th Cir. 1999). Here, there is no dispute regarding the parties' capability to contract, their agreement was for a lawful matter, and employment constituted sufficient consideration. Thus, the only question before the Court is whether Warren consented to the arbitration agreement.

Where the existence of an agreement to arbitrate is disputed, the Court applies the summary judgment standard. See, e.g., Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1141 (9th Cir. 1991) (indicating agreement with the Third Circuit in applying the summary judgment standard to whether an arbitration agreement was formed); Switch, LLC v. ixmation, Inc., 2015 WL 4463672, at *5 (N.D. Cal. July 21, 2015) (applying summary judgment

---

[1] The Court notes the parties' briefs and the Complaint spell Broscoi's first name as "Floanea," but the signed Acknowledgement spells her first name as "Floarea."

standard to motion to compel arbitration where parties disputed the existence of an agreement to arbitrate).

Here, the Agreement, containing the arbitration terms, and the Acknowledgement, referring to the Agreement, together could constitute Warren's assent to arbitration. Despite the Acknowledgement carrying her electronic signature, Warren disputes seeing either the Agreement or the Acknowledgement. Del Taco's Vice-President of Human Resources submitted a declaration explaining the typical on-boarding process includes candidates creating unique logins to the People Matter system and electronically signing a variety of documents, including a 401K plan highlights document, the Code of Ethics policy, a Health and Hygiene policy acknowledgement, and the Acknowledgement. (Graves Decl. ¶ 7-8, 14.) In Warren's personnel file, numerous on-boarding documents carry her electronic signature and time stamp of April 20, 2017 between 7:50 p.m. and 8:30 p.m. (See Ex. C, Haney Decl., Dkt. No. 27-3; Ex. B, Womack Decl., Dkt. No. 29-2.) The signed Acknowledgement was one of the documents in Warren's file, and Del Taco's Vice-President declares the Agreement was located as a PDF on People Matter in April 2017. (Graves Decl. ¶ 8.)

Plaintiff argues Del Taco sent two different versions of the Agreement when her counsel asked for the arbitration agreement she signed, thus demonstrating no valid agreement was ever presented to Warren. (Mot. at 7-8.) The first version, sent on January 26, 2018, was the English-language Agreement along with a Spanish-language version, and Plaintiff's signed Acknowledgement. (Ex. A, Haney Decl.) The second version, send on February 5, 2018, as part of Warren's entire personnel file, was only the signed Acknowledgement. (Ex. B, Womack Decl.) The Court does not find these two emailed documents sufficient to establish Warren was never presented with the Agreement. As Del Taco's Vice President declared, the Agreement was located in People Matter in April 2017. The full document may include both the English and Spanish versions, whereas Defendants only attached the English version in response to Plaintiff's counsel's request. Moreover, just as Defendants did not include many of the attached documents referenced in the various signed acknowledgements in the request for Plaintiff's personnel file,[2] the absence of the Agreement in the file does not automatically establish the Agreement was not online. The included Acknowledgement clearly references the "Agreement." Plaintiff's denial of seeing the Agreement and her counsel's receipt of different versions of the Agreement are not sufficient to create a dispute as to whether it was online at the relevant time. Thus, the Court finds no genuine dispute of fact as to whether the Agreement was present on the People Matter system when accessed by Plaintiff in April 2017.

---

[2] For example, Warren's electronic signature is on the "CA Field Required Notices and Disclosures" document. (Ex. B. at 10, Womack Decl.) Yet the referenced "brochures and required notices" the employee is to read before signing were not included in the personnel file request. (See id.) Another example is Warren's signed Confidential Disclosure Agreement. (Id. at 13.) The disclosure agreement acknowledgement references the Del Taco Management Confidential Disclosure Agreement and acknowledges the signee has read the document, but the document itself was not included in the personnel file request. (See id.)

Moreover, the Court rejects any implication that Plaintiff's failure to see the Agreement invalidates it.  A cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement.  Desert Outdoor Adver. v. Super. Ct., 196 Cal. App. 4th 866, 872 (2011).  In a similar vein, "courts must presume parties understood the agreements they sign, and that the parties intended whatever the agreement objectively provides, whether or not they subjectively did."  Roldan v. Callahan & Blaine, 219 Cal. App. 4th 87, 93 (2013), as modified (Sept. 18, 2013).  Here, Defendants have presented evidence that Plaintiff was required to complete onboard training, including signing numerous documents, to begin work, and the Agreement was online when Plaintiff accessed People Matter.  (Graves Decl. ¶¶ 8, 10.)

Plaintiff also asserts her electronic signature on the Acknowledgment is fraudulent.  (Mot. at 8.)  A forged signature can be sufficient to invalidate an arbitration agreement.  Cornejo v. Spenger's Fresh Fish Grotto, 2010 WL 1980236, at *4 (N.D. Cal. May 17, 2010) (citing 9 U.S.C. § 2).  "[I]t is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends . . . the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."  Grabowski v. Robinson, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011).

California Civil Code § 1633.9 provides "An electronic record or electronic signature is attributable to a person if it was the act of the person.  The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."  Cal. Civ. Code § 1633.9(a).  The burden to prove the authenticity of an electronic signature is by a preponderance of the evidence.  Ruiz v. Moss Bros. Auto Grp., 232 Cal. App. 4th 836, 846 (2014).  In Ruiz, the court affirmed the trial court's determination that the defendants had not presented sufficient evidence to authenticate the plaintiff's electronic signature on the arbitration agreement at issue.  The Ruiz court explained the defendants had not explained how the plaintiff's signature could have been placed on the document using the plaintiff's "unique login ID and password" or how the signature timestamp was created.  Id. at 844.  Instead, the defendants had only submitted a declaration "summarily asserting" that the plaintiff was the person who signed the document.  Id. at 788.

Here, Del Taco's Vice President declares the People Matter system requires a candidate input their username and password to electronically sign a document.  (Graves Decl. ¶ 8.) Moreover, Warren's People Matter history does not show a changed password between the date her login was created and the date her documents were signed.  (Id. ¶ 15.)  As noted above, Warren's electronic signature appears on over ten other signature pages pertaining to various on-boarding documents all timestamped on the evening of April 20, 2017.  (See Ex. C, Haney Decl.) On the other hand, Plaintiff presents no evidence to dispute her ability to access the People Matter system or sign the on-boarding documents other than her "general denial" of doing so. Cf. Chavez v. Bank of Am., 2011 WL 4712204, at *9 (N.D. Cal. Oct. 7, 2011) (finding a genuine dispute of material fact where plaintiff submitted a declaration denying consent and receipt of contract containing arbitration provision and his mailing address on file with the company where

the contract was sent was incorrect). Defendants' evidence of how Plaintiff accessed People Matter using a unique login, and how that login is required to place an electronic signature on a document establishes by a preponderance of the evidence that her electronic signature was authentic. Consequently, the Court finds Warren's electronic signature was authentic. See Nanavati v. Adecco USA, Inc., 2015 WL 1738152, at *3 (N.D. Cal. Apr. 13, 2015) (stating "in the absence of evidence raising any doubts as to the provenance of the electronic signature on the Agreement, the detailed Watson declaration easily satisfies Defendant′s low burden to authenticate Plaintiff's electronic signature").

In addition, Defendants argue Plaintiff's continued employment at Del Taco after viewing the Agreement through litigation establishes her acceptance of its terms. (Reply at 5.) The Agreement provides, "I understand that if I am currently employed by the Company, my continued employment with the Company is consideration for my acceptance of this Agreement." (Agreement at 1.) An acceptance of an arbitration agreement can be implied-in-fact where the employee's continued employed constitutes acceptance. Craig v. Brown & Root, Inc., 84 Cal. App. 4th 416, 420 (2000). In Craig, the court found the plaintiff had accepted the arbitration agreement because there was substantial evidence she had received the brochure explaining arbitration and that an employee would be bound to it, and the plaintiff continued working for the company afterwards. Id. at 422. Here, however, it is not clear from any of the submitted declarations or the Complaint whether Plaintiff is still employed at Del Taco. In its prayer for relief, the Complaint seeks an injunction to reinstate Plaintiff at Del Taco, without the discriminatory acts. (Compl. at 16.) None of the declarations explicitly state that Plaintiff was terminated or that she is still working at Del Taco. Therefore, there is not adequate evidence for the Court to conclude that she has continued working at Del Taco after viewing the Agreement such that her continued employment constitutes its acceptance.

In conclusion, Defendants have presented sufficient evidence to establish the Agreement was present on the People Matter system in April 2017 when Plaintiff accessed the site and to authenticate Plaintiff's electronic signature on the Acknowledgment. Plaintiff has not raised a genuine issue of material fact as to whether a valid arbitration agreement exists between the parties, and the Court determines a valid arbitration agreement between Warren and Del Taco exists that encompasses Plaintiff's employment-related claims against Defendants.

**B.  Enforcement of the Agreement**

To determine the validity of the Agreement, the Court must analyze the contract terms under state law. Galvan v. Michael Kors USA Holdings, Inc., 2017 WL 253985, at *4 (C.D. Cal. Jan. 19, 2017). Under California law, courts may refuse to enforce any contract found "to have been unconscionable at the time it was made," or may "limit the application of any unconscionable clause." Cal. Civ. Code Ann. § 1670.5(a); see also Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000) ("[B]ecause unconscionability is a reason for refusing to enforce contracts generally, it is also a valid reason for refusing to enforce an arbitration agreement . . ."). A finding of unconscionability requires a "procedural" and a "substantive" element, the former focusing on "oppression" or "surprise" due to unequal bargaining power,

the latter on "overly harsh" or "one-sided" results.  A&M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486 (1982).  Both procedural and substantive unconscionability must be present for a court to refuse to enforce a contract or clause under the doctrine of unconscionability.  Armendariz, 24 Cal. 4th at 114.  However, courts employ a "sliding scale" approach, requiring less procedural unconscionability where the terms are more substantively oppressive, and vice versa.  Id.

   1. **Procedural Unconscionability**

The threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive.  Galvan, 2017 WL 253985, at *5 (citing Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1281 (9th Cir. 2006)).  Procedural unconscionability analysis focuses on the manner in which the contract or clause was presented and negotiated.  Nagrampa, 469 F.3d 1257 at 1282.  "When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present."  Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1100 (2002).

Plaintiff argues the Agreement is a contract of adhesion because potential Del Taco employees must sign the Acknowledgement or they will not be hired.  (Opp'n at 13-14.)  Plaintiff also argues the Agreement is procedurally unconscionable because Plaintiff was never provided with the arbitration rules for Judicial Arbitration and Mediation Services, Inc. ("JAMS") or given the opportunity to seek the advice of an attorney.  (Id. at 14-15.)  Defendant does not counter these arguments, and argues only the Agreement is not substantively unconscionable.  (Mot. at 9; Reply at 6.)

"At a minimum, a party must have reasonable notice of his opportunity to negotiate or reject the terms of a contract, and he must have an actual, meaningful, and reasonable choice to exercise that discretion."  Circuit City Stores, Inc. v. Mantor, 335 F.3d 1101, 1106 (9th Cir. 2003).  In Galvan, the employee was presented the arbitration agreement in a sequence of onboarding documents and told he must complete the form before moving onto the next onboarding document.  2017 WL 253985, at *5.  The employee also did not have an opportunity to negotiate the arbitration terms.  Id.  Under those circumstances, the Galvan court found "some degree of procedural unconscionability."  Id.  Here, as in Galvan, the adhesive nature of the Agreement and the sequence of onboarding documents evince a moderate level of procedural unconscionability.  Thus, the Court must also determine whether substantive unconscionability is present.

   2. **Substantive Unconscionability**

Substantive unconscionability analysis focuses on the terms of the agreement and whether those terms are "so one-sided as to shock the conscience."  Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003).  The court evaluates the substantive terms of the contract at the time it was made.  A&M Produce Co., 135 Cal. App. 3d at 487.  Given the moderate degree of

procedural unconscionability found, Plaintiff must still demonstrate some substantive unconscionability exists to render the arbitration agreement unenforceable.

Plaintiff does not clearly assert how the Agreement is substantively unconscionable, and her arguments appear to concern solely procedural unconscionability.  (See Opp'n at 12-15.)  Nonetheless, the Court evaluates whether the Agreement is substantively unconscionable according to the Armendariz principles.  Defendants argue the Agreement is not unconscionable because it (1) provides for a neutral arbitrator, (2) ensures adequate discovery, (3) provides for a written award, and (4) does not limit the remedies available in arbitration, (5) does not require employees to bear unreasonable expenses, and (6) provides for a modicum of bilaterality between employee and employer.  (Mot. at 9.)

### a. Neutral Arbitrator

The Agreement provides the arbitrator will be "selected by the mutual agreement of the parties."  (Id. at 2.)  If the parties cannot agree on a neutral arbitrator, the employee first and then Del Taco will alternative strike names from a list of arbitrators provided by the JAMS until one name remains.  (Id.)  Thus, the Court finds the Agreement provides for a neutral arbitrator and is not substantively unconscionable in this regard.

### b. Adequate Discovery, Written Award, and Remedies Available

Defendants argue the Agreement provides for adequate discovery, requires a written award, and does not limit the remedies available.  (Mot. at 10-11.)  While full discovery may not be required during arbitration, the parties are entitled to discovery sufficient to adequately arbitrate their claims.  See Armendariz, 24 Cal. 4 at 105-06.  In addition, an arbitration agreement may not limit statutorily imposed remedies, and a written arbitration decision should contain the essential findings and conclusions on which the award is based.  Id. at 103, 107.

The Agreement provides for written discovery and depositions as provided in California Civil Procedure § 1283.05.  (Agreement at 2.)  In Armendariz, the court noted discovery "less than the full panoply provided in § 1238.05" could be permissible in arbitration.  24 Cal. 4th at 105-06.  Here, the "full panoply" is permitted and therefore the parties are entitled to sufficient discovery.  The Agreement also requires a "written decision by the arbitration that includes the essential findings and conclusions upon which the decision is based" to be issued no later than thirty days after a dispositive motion is heard or arbitration is completed.  (Agreement at 2.)  Lastly, the Agreement grants the arbitrator the authority to "grant all remedies otherwise available by law, including injunctions."  (Id.)  Thus, the Court finds the Agreement is not substantively unconscionable regarding these provisions.

### c. Expenses and Costs

In Armendariz, the California Supreme Court held an employment arbitration agreement "cannot generally require the employee to bear any type of expense that the employee would not

be required to bear if he or she were free to bring the action in court." 24 Cal. 4th at 110-11. Here, the Agreement requires the employee to pay an initial arbitration fee "equal to what I would be charged as a first appearance fee in court." (Agreement at 2.) Del Taco advances the remaining fees and costs of the arbitrator. (Id.) However, the arbitrator may rule the fees and costs be distributed in an alternative manner, and each party shall pay its own attorneys' fees and costs, unless the arbitrator awards the prevailing party attorneys' fees. (Id.) The Court finds these cost-splitting provisions do not place a heavier burden on the employee than what he or she would face in court and the Agreement's expense provisions are not substantively unconscionable.

### d. Bilaterality

Lastly, Defendants argue the Agreement retains a "modicum of bilaterality" by requiring mutual arbitration. (Mot. at 12.) As the Armendariz court explicated, the doctrine of unconscionability limits the extent to which a stronger party can employ one-sided terms to the detriment of the weaker party. 24 Cal. 4th at 118. Here, Del Taco has agreed to arbitrate its claims against employees and the Agreement can only be altered by "a writing signed by the parties that specifically states an intent to revoke or modify this Agreement." (Agreement at 1-2.) Finding mutuality present in the arbitration agreement, the Court determines the Agreement does not unconscionably limit Plaintiff's rights.

In light of the Court's finding of moderate procedural unconscionability, a finding of some substantive unconscionability could have invalidated the Agreement. The Court finds insufficient evidence of substantive unconscionability to warrant a finding of invalidity.

### IV. CONCLUSION

Based on the foregoing, the Court concludes the arbitration agreement between Warren and Del Taco was valid, encompasses Plaintiff's claims against Defendants, and is not unconscionable. The Court GRANTS Defendants' Motion to compel arbitration and DISMISSES the case. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**